UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:09-cr-98 |
| | ) | |
| RYAN SHARP | ) | Mattice/Carter |

REPORT AND RECOMMENDATION

I. Introduction

Defendant Ryan Sharp, charged with federal drug trafficking crimes and use of a firearm in furtherance thereof, moves to suppress evidence found in his residence and for disclosure of the identities of confidential informants. [Docs. 384 and 385, respectively).

Defendant asserts the confidential informants referenced in the affidavit used to obtain the search warrant for his residence made false statements to the agent who prepared and signed the affidavit and that, therefore, the affidavit does not support issuance of the search warrant. Further, argues the defendant, he should be allowed to discover the identities of these confidential informants in order to prove the information they provided to the agent was false. Because it is immaterial to the probable cause analysis that the informants, as opposed to the agent, made false statements in the search warrant affidavit, it is RECOMMENDED that defendant's motions to disclose the confidential informants and to suppress the evidence seized in his residence be DENIED.

II. Relevant Facts

On May 14, 2008, Agent Eric Allman of the Tenth Judicial Drug Task Force obtained a search warrant for Sharp's residence at 110A County Road 738, Riceville, Tennessee. The

1

warrant was signed by a judicial officer of McMinn County, Tennessee. Agent Allman prepared the affidavit used to obtain the search warrant (the Affidavit). The warrant was executed on May 15, 2008 and a number of incriminating items were found. Sharp was subsequently charged with conspiracy to distribute five grams or more of crack cocaine between January 2005 and May 2009; possession on May 15, 2008 with intent to distribute more than five grams of powder cocaine; possession on May 15, 2008 of a firearm in furtherance of a drug trafficking offense; and being a felon in possession on May 15, 2008 of a firearm, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C) and 18 U.S.C. §§ 942(c) and 922(g)(1).

In his very detailed affidavit used to obtain the search warrant, Agent Allman averred the following:

A confidential informant (CI1) provided information about Diaz Benton and his drug distribution activities. CI1 identified Benton's residence, separate from the defendant's residence, on Thacker Lane in Etowah, Tennessee and made a controlled purchase from Benton on February 27, 2008 at a location of Benton's choosing. This buy did not occur on Thacker Lane. A controlled purchase is a standard drug investigative technique whereby police search the confidential informant and his/her vehicle prior to a buy, provide surveillance equipment to the confidential informant, observe the confidential informant when he/she meets the drug seller, continue to observe the confidential informant until meeting with him/her after the buy at a designated location, and search the confidential informant and the confidential informant's vehicle to make certain no money or drugs have been retained. (Affidavit ¶¶ 3,4,5).

On March 11, 2008 another confidential informant (CI2) contacted Allman and told him there was a black male named Diaz living in Etowah who was selling crack. CI2 made

statements against his/her penal interest and provided information about other drug dealers in Athens that Allman knew to be true. (Affidavit ¶ 6).

On March 24, 2008, CI1 made another controlled buy of crack from Benton – this time at Benton's residence on Thacker Lane in Etowah, Tennessee. The controlled buy was audio-recorded. On March 26, 2008, CI1 successfully identified Benton in a photo lineup. (Affidavit ¶¶ 7-8).

On March 27, 2008, a third confidential informant (CI3) spoke with Allman and told him that he/she had purchased crack from Diaz Benton multiple times. CI3 also told Allman that Diaz Benton lives in an apartment in Etowah and that CI3 has seen crack in Benton's apartment. (Affidavit ¶ 9).

On April 16, 2008, CI3 told Allman that he/she had seen Benton with at least one ounce of crack in his possession at a residence in East Etowah and that he/she had personally observed Benton sell powder cocaine to one person and crack to another out of that residence. On April 17, 2008, CI3 told Allman about two separate residences in the East Etowah area where Benton commonly sells crack and powder cocaine. On April 18, 2008, CI3 told Allman he/she personally observed Benton sell crack from a residence at County Road 890, Etowah, Tennessee. On April 23, 2008, CI3 made a controlled buy of cocaine from Benton. Benton arrived at CI3's residence as a passenger in a silver Honda Accord and made the sale, which was monitored and recorded. (Affidavit ¶¶ 10, 11, 12, 13).

On May 10, 2008, Agent Allman spoke with CI1 again who advised that he/she had observed the defendant that day with one ounce of crack. A fourth confidential informant (CI4) also contacted Allman that day and advised that he/she had personally observed the defendant in

3

Case 1:09-cr-00098-TRM-CHS   Document 424   Filed 03/18/10   Page 3 of 11
PageID #: 915

possession of over one ounce of crack cocaine and a firearm. Agent Allman stated in his affidavit that CI4 has provided drug information to law enforcement in the past that had not otherwise been known to the public but had later been corroborated and proven to be truthful. CI4 has also provided information to law enforcement in the past that has lead to the arrest and conviction of drug dealers. (Affidavit ¶ 14(b)).

Allman also averred that within 72 hours of his signing the Affidavit, CI3 told him that Diaz Benton had been staying with Sharp at Sharp's residence, a duplex, at 110A County Road 738, Riceville, Tennessee. CI3 told Agent Allman about very specific hiding places inside the residence where the defendant secreted guns and drugs. CI3 also told Allman that he/she had personally observed Benton and Sharp in possession of crack and powder inside one of the apartments at 110 County Road 738. CI3 further stated that the defendant and Benton were being driven around by a black female known only as "Yulonda" in a silver Honda Accord – the same type of vehicle in which Benton was a passenger during the controlled buy on April 23, 2008. CI3 took agents to the duplex at 110A County Road 738, Riceville, Tennessee and indicated which apartment Benton and Sharp occupied. (Affidavit ¶ 14).

On May 14, 2008, in the early morning hours, Agent Allman drove to 110A County Road 738 in Riceville, Tennessee and saw a silver Honda Accord parked in front of it. By running a check on the license plate, he discovered it was registered to Yulonda Smith, a black female. Agent Allman also obtained an offense report from the McMinn County Sheriff's Office dated April 22, 2008 for a police call made in response to a possible domestic disturbance at 110A County Road 738. The report indicated that one Ryan Sharp and one Yulonda Smith were present at the residence and were in a verbal altercation. (Affidavit ¶ 14(a)).

4

Case 1:09-cr-00098-TRM-CHS   Document 424   Filed 03/18/10   Page 4 of 11
PageID #: 916

Agent Allman further stated that CI1 and CI3 have (1) provided information to law enforcement which was not public but has been corroborated by Allman though independent corroboration, (2) provided information which has lead to seizing of controlled substances from drug dealers, (3) admitted their "previous involvement in the drug culture" and (4) demonstrated their knowledge, understanding, and recognition of crack, cocaine powder and the activities surrounding their use and distribution. Agent Allman also gave the names of CI1, CI2 and CI3 to the judicial official to whom the search warrant application was made.

### III. Analysis

It is defendant's contention that (1) Benton never, at any time, lived or even visited Sharp's residence; (2) that the confidential informants mentioned in the Affidavit lied about Benton's having been at any time at Sharp's residence; (3) that Sharp needs to know the identities of the confidential informants so that they can be questioned about the information they provided to Allman; and (4) that, if Sharp can prove in an evidentiary hearing that the confidential informants lied about Benton being at Sharp's residence, (and about any of the other information they gave Allman) then the Affidavit cannot support probable cause to search defendant's residence and all contraband found there will have to be suppressed.

Defendant's motions are based on one insurmountable error– that it is material to a finding of probable cause that the confidential informants, as opposed to Agent Allman, lied.

*A. No Franks Hearing is Warranted*

While he does not characterize it in this way, the defendant appears to be asking for a *Franks* hearing, but, based on his submission, the defendant is not entitled to an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). The purpose of a *Franks* hearing

5

is to allow the defendant to challenge the truthfulness of statements in an affidavit in order to challenge the legality of a search warrant issued on the basis of the affidavit. *Id*. An officer's affidavit is entitled to a presumption of validity, *id.* at 171; however, "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Id.* at 155-56. The Sixth Circuit has stated the analysis as follows:

> A defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden. His allegations must be more than conclusory. He must point to specific false statements that he claims were made intentionally or with reckless disregard for the truth. He must accompany his allegations with an offer of proof. Moreover, he also should provide supporting affidavits or explain their absence. If he meets these requirements, then the question becomes whether, absent the challenged statements, there remains sufficient content in the affidavit to support a finding of probable cause.

*United States v. Bennett*, 905 F.2d 931, 934 (6th Cir.1990) (citations omitted).

A *Franks* hearing requires that the defendant make a substantial preliminary showing that the *affiant*, rather than the *informant*, deliberately or recklessly included false information in the affidavit. *Franks v. Delaware,* 438 U.S. 154, 155 (1978); *United States v. Stuart*, 507 F.3d 391, 396 (6th Cir. 2007)*; United States v. Trujillo*, 376 F.3d 593, 603-04 (6th Cir. 2004); *United States v. Pritchett*, 40 Fed.Appx. 901, 905, 2002 WL 1478584, 2 (6th Cir. July 9, 2002); *United States v. Fields*, 229 F.3d 1154, 2000 WL 1140557, 4 (6th Cir. Aug. 4, 2000); *United States v. Giacalone*, 853 F.2d 470, 474-76 (6th Cir. 1988); *United States v. Kelley*, 596 F.Supp.2d 1132, 1149-50 (E.D. Tenn. 2009).

6

The defendant has not met his burden for a *Franks* hearing in this case. The defendant claims that statements made by separate informants to Allman were false, *not* that Allman himself deliberately or recklessly included false information in the affidavit. It may be that the information about Diaz Benton's involvement at the defendant's residence was incorrect or false, but defendant has presented no evidence whatsoever that Agent Allman knew one or more of the confidential informants lied or that Allman, with reckless disregard for the truth, ignored information which would indicate that one or more of the confidential informants lied.

### B. Defendant is Not Entitled to Discover the Identities of the Confidential Informants

Since the defendant is not entitled to a *Franks* hearing, he does not need the confidential informants' identities in order to subpoena them to a *Franks* hearing. Further, he has not articulated any other reason which would entitle him to their identities, as he has not shown their identities would be relevant or helpful to his defense.

The government enjoys the privilege of withholding the identities of individuals who provide information regarding violations of the law. *Roviaro v. United States*, 353 U.S. 53, 59 (1957). This privilege "recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id*. The privilege is limited, however, by fundamental fairness. *Id*. at 60. "Where the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a course, the privilege must give way." *Id.* at 60-61, *accord United States v. Straughter*, 950 F.2d 1223, 1232 (6th Cir.1991); *United States v. Sharp*, 778 F.2d 1182, 1185 (6th Cir. 1985). The defendant bears the burden of demonstrating how disclosure would substantively

7

assist his defense. *United States v. Moore*, 954 F.2d 379, 381 (6th Cir.1992). Disclosure usually is not required "when the informer was not a participant, but was a mere tipster or introducer." *Sharp*, 778 F.2d at 1186 n. 2. And "[i]f the evidence on which the defendant was convicted was obtained personally by the government agents who did testify, the government is not required to produce the cooperating individual." *United States v. Jenkins*, 4 F.3d 1338, 1341 (6th Cir. 1993); *see also, Moore*, 954 F.2d at 381. "An informant must be disclosed only upon a showing by the defendant that disclosure is essential to a fair trial." *Moore*, 954 F.2d at 381.

The government avers it will offer proof at trial of evidence obtained personally by police officers, not evidence obtained by the confidential informants. The government will not call any of the confidential informants as witnesses, and none of confidential informants were participants in the specific crimes for which defendant has been charged. The defendant has not shown that the contents of their communications to Agent Allman would be relevant or helpful to his defense. Accordingly, defendant is not entitled to their identities. *See United States v. Jackson*, 990 F.2d 251, 255 (6th Cir.1993) (affirming district court's decision to deny disclosure of true name and address of government informant because unnamed informer was not a participant in any of the offenses with which the defendant was charged, was not in the apartment when the defendant was arrested, and defendant was not charged in relation to the controlled sale to the defendant).

### C. The Affidavit Supports Probable Cause

The defendant challenges the sufficiency of the Affidavit on the ground that some of the information in the Affidavit is false; the defendant does not contend that the Affidavit *on its face*

Case 1:09-cr-00098-TRM-CHS   Document 424   Filed 03/18/10   Page 8 of 11
PageID #: 920

is insufficient to establish probable cause to issue a search warrant for the defendant's residence. Nevertheless, the undersigned will briefly address the latter issue.

The United States Supreme Court has adopted a "totality of the circumstances" test for determining whether an affidavit establishes probable cause for the issuance of a warrant. *Illinois v. Gates*, 462 U.S. 213, 230 (1980); *see also United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009). "Probable cause for the issuance of a search warrant is defined in terms of whether the affidavit sets out facts and circumstances which indicate a 'fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. Finch*, 998 F.2d 349, 352 (6th Cir. 1993) (quoting *United States v. Bowling*, 900 F.2d 926, 930 (6th Cir.1990); *accord Dyer*, 580 F.3d at 390. A magistrate's probable cause determination should be made in "realistic and common sense fashion," and reviewed in the same manner. *Finch*, 998 F.2d at 351 (further citations omitted); *accord Dyer*, 580 F.3d at 392.

In describing the application of the *Gates* totality of the circumstances test, the United States Court of Appeals for the Sixth Circuit has stated:

> in applying its "totality of the circumstances" test, the *Gates* court identified three factors in determining whether probable cause existed: 1) the basis of the informant's knowledge; 2) the reliability of the informant; and, 3) the corroborative evidence presented by the government. *Gates*, 462 U.S. at 230-232, 245. The *Gates* court noted that these factors are not to be analyzed as "separate and independent requirements to be rigidly exacted in every case." *Gates*, 462 U.S. at 230. Rather, the reviewing court is to weigh them together in determining whether they form a substantial basis for finding probable cause. *Id.* The strength of one or more of these factors may compensate for the deficiencies of another factor. *Gates,* 462 U.S. at 233-34.

*United States v. Shamaeizadeh*, 80 F.3d 1131, 1137 (6th Cir. 1996).

The affidavit for the May 15, 2008 search was unusually detailed and easily established probable cause for the issuance of a search warrant for the defendant's residence. Agent Allman used four different confidential informants and established the reliability of each in different ways, including statements against penal interests, *see United States v. Higgins*, 557 F.3d 381, 389-90 (6th Cir. 2009); controlled buys, *see United States v. Jackson*, 470 F.3d 299, 307-08 (6th Cir. 2006); a history of providing reliable information leading to arrests and conviction of drug dealers; *see United States v. Williams*, 224 F.3d 530, 532-33 (6th Cir. 2000); and providing the names of the confidential informants to the judicial officer who signed the search warrant, *see United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000) (*en banc*).

Information establishing a nexus between drug trafficking and the defendant's residence came from three (3) of the confidential informants beginning on May 10, 2008 – four days before the warrant was obtained. On May 10, 2008, CI1 and CI4 each told Agent Allman that he/she had seen the defendant with one ounce of cocaine. CI3 also reported within the last 72 hours he/she had personally observed defendant in possession of crack and powder cocaine inside the duplex at 110 County Road 738. Law enforcement was also able to make a controlled purchase from Benton using CI3. During that controlled purchase, Benton showed up for the deal as a passenger in a silver Honda Accord – the type of vehicle owned and operated by Yulonda Smith. Agent Allman was then able to determine that the residence CI3 said was occupied by the defendant, 110A County Road 738, had recently been the location of a police call on an incident involving Yulonda Smith and the defendant. Finally, in the early morning hours of May 14, 2008, Agent Allman personally observed at the defendant's residence the silver Honda Accord

10

owned by Smith and used by Benton as a passenger to make the sale that was the subject of a controlled purchase by CI3 on behalf of law enforcement in late April.

In sum, Agent Allman had reliable, credible information as well as corroborating evidence that cocaine was located at defendant's home and that a known drug dealer was staying or visiting at that home overnight and likely using it along with defendant as another venue from which to sell cocaine. Thus, based on the information in the Affidavit, one could reasonably conclude there was a fair probability that evidence of a crime would be found in defendant's residence.

### IV. Conclusion

For the reasons stated herein, it is RECOMMENDED that defendant's motion to suppress (Doc. 384) and defendant's motion for disclosure of the identities of the confidential informants (Doc. 385) be DENIED.[1]

Dated: March 18, 2010

s/William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).